The first case today is number 21-1545 United States v. Ricardo Alberto Villa-Guillen. At this time, would counsel for the appellant please introduce herself on the record to begin. Good morning, your honors. My name is Rachel Brill. I'm appearing on behalf of Ricardo Villa-Guillen, and I'd like to reserve three minutes of my time for rebuttal. You may. Thank you. May it please the court. This is an appeal from a trial that was permeated with error. Time after time, most egregiously, with the Florida testimony and with the admission of the tortured version of docket number 498, prejudicial and irrelevant evidence came in over vigorous defense objection. Juxtaposed with that, but just as harmfully, time after time, the efforts of the defense to attack the credibility and the bias of the prosecution's cases, actually only cases against him, were improperly thwarted. And the result was predictable. An utterly unfair trial that would have undoubtedly ended differently had the improper evidence been excluded and had Mr. Villa-Guillen been able to adequately address the incredible allegations on those cases. So, Ms. Brill, something with the Florida evidence, why isn't it fair for us to think of that evidence as giving context to the relationship between your client and Mr. Villa-Guillen? In other words, we have a case law that talks about people who are in the drug distribution business just don't trust everybody, and this gives us some indication that maybe the reason for the trust in the subsequent conspiracy with which he was charged, that the prior relationship was one of building trust. So, Judge Thompson, you are referring to testimony from Mr. Herrera about Mr. Herrera's activities between 2005 and 2008. That's not the Florida testimony. The Florida testimony is a traffic stop that happened in 2012, does not involve Mr. Herrera, has nothing to do with Mr. Herrera, and was not testified about by Mr. Herrera. But addressing your question about the so-called background testimony by Herrera, where he describes his activities in an admittedly different conspiracy years earlier than the charged conspiracy, and he gratuitously mentions that Mr. Villa-Guillen participated in those during that time. It was never designated as 404B evidence. It was never justified as necessary background evidence. In other words, there was plenty of opportunity for Mr. Herrera to explain why he knew Mr. Villa-Guillen. They had some brother-in-law kind of relationship that was alluded to in the court. There was a picture of all of them together on a fishing trip, so there was plenty of opportunity. The prejudicial earlier testimony was unnecessary, and that's what this court has ruled is necessary for Yes, Mr. Villa-Guillen's trial counsel got up in the middle of the testimony, well, as right after Mr. Villa's trial counsel got up right after Mr. Villa's name was mentioned in that earlier time period, objected, and the prosecutor conceded it was an earlier time period, not part of the conspiracy, and called it background, and the objection was overruled. Was there an exquisite 404B objection? 404B objection, I don't think there was, but again, that's not the, but no, I don't think there was it. For that background testimony, there was not. Counsel, can I ask you, moving back to the Florida testimony, was there, I know the record shows there were rule 401 and 403 objections to that testimony. Was there a 404B objection to that particular testimony? So there was a number of 404B, 404B allegation about that testimony, and, or notification, I should say, about that testimony. Prior to trial, the defense requested it. The government provided in the form of 2017 evidence that was never admitted in trial, so the only discussion of 404B, 404B, the only notification of 404B, came with this, in reference to this 2017 event, and never came up at trial. But on appeal, you're arguing that Florida testimony is 404B evidence. That's right. On appeal, I'm arguing that the Florida testimony was improperly admitted, most of all, primarily because it is irrelevant. The government, during the argument at the bench, at the objections at the bench, which were relevant and prejudiced objections at the bench, they said, Mr. Bia's counsel, you know this is linked, right? Say this is evidence of intent or knowledge, that you know this is linked. Never linked it, never, and that's our contention, our primary contention on appeal. During the closing argument, the prosecutors seemed to argue a whole bunch of things, including that it was evidence of knowledge and intent, which I guess is a reference to rule 404B, but nothing was ever made explicit, nothing was ever designated, nothing was ever notified, and the government was literally given free reign to, I contend, to argue as it pleased about the Florida testimony. Counsel, why isn't this testimony relevant? It's in the I understand it's in Florida, it's not in Puerto Rico. I understand your arguments about why it's very different conduct, but it is your client being arrested with large amounts of cash that the officers who arrested him say is package bundled in a way to suggest that the drug buys that to happen. So why, you know, under the broad standard of relevance, does it have no no relevance whatsoever to him being charged with being part of a drug smuggling operation? For many reasons, your honor. The relevance, the indictment charges a conspiracy of suitcases being sent from the San Juan International Airport to JFK Airport in New York where they are picked up, well I should say that they are, the indictment charges that drugs are transporting from the San Juan International Airport to New York where they are delivered. The prosecutor's opening statement, every single plea agreement version of the fact, every aspect of Herrera's testimony, every aspect of the other witnesses' testimony, all speaks about that conspiracy. Suitcases, corrupt airport officials here in Puerto Rico, loaded onto the planes in Puerto Rico, going to New York where they're picked up by an involved taxi driver. I have no view to be with you, the facts look very different, but the relevance standard of course is just does the fact make it somewhat more likely that the ultimate argument that's being made is correct? Only from a propensity, only from a forbidden propensity point of view. Well that's why I asked if you've made a 404B objection to this testimony. Well again it was never notified as 404B, it was never argued as, or be accepted some muddled way in the opposing arguments, but I think what you're... But you objected, there was an objection. Yes, oh yes, and I think what your honor is getting at is the investor argument perhaps that Mr. Villa was alluded to being an investor, but that, like the indictment, was very specific. Herrera defined what an investor was. An investor was an owner of the portion of the shipment and Mr. Villa, in particular, was the owner of one to two kilos on five occasions, and that's at page 351 of the appendix. It's nonsensical, and therefore entirely irrelevant, to think of cocaine that's already on the mainland to be part of this particular charged conspiracy. The raison d'etre of the charged conspiracy was to get the cocaine out of Puerto Rico, that's why there needed to be corrupt airplane employees, and we secreted it in suitcases, that was the point of this conspiracy. So cocaine already in Florida could not be part of this conspiracy, and dealing with cocaine in Florida, again only from a propensity point of view, makes it makes it relevant. I'd like to, if I could your honor, address the other bookend as well, which, so the Florida testimony was the very first evidence that the jury heard. We contend, and continue to contend, entirely irrelevant evidence, but the very last evidence was even worse, from a fair trial point of view. In May of 2019, in a different case, and months after a several-day suppression hearing had concluded, Mr. Bohemian wrote to the court. How did that come up in the first place? How did it come up? He wrote to Mr. Bohemian. No, I know he wrote to the court for letters, and read the letter, but it's like, how did it come up in the context of this trial? Right, well it got docketed on both dockets, and then the government designated it as evidence, and then the defense objected in writing to its admission. The court allowed it in an order subject to the government proving its relevance, and then there was arguments throughout the trial of whether, and how the world, as your honor may be alluding to, could it have come in, and the judge let it in, but it was designated after he wrote it to the court, and after it was docketed on. But his deemed relevance was what? What, sorry? Deemed relevance was what? Well, I contend that the letter was not alone satisfied. The letter was, I mean, you know, the government might say it was selectively edited, contending it was butchered and mangled. The letter was about a ruling on a suppression matter. All reference to the suppression matter, all reference to the ruling, all reference to the other case was eliminated from the record. I'm sorry, are you saying that the letter in its Both, both, both, your honor. And, but what was the relevance? The relevance was what the prosecutor argued during his closing, your honor. The prosecutor on one or two different occasions during the initial closing and two or three different occasions during the rebuttal said, this letter is an admission. This letter is my client, my client, not the client, the defendant, admitting that he was, he's subject to an agreement because he is guilty. And that's, you can find in the opening around page 509 of the appendix and in the rebuttal around page 527 of the, of the appendix. So this was entered as an admission by a defendant, which your honor, Judge Thompson said was okay in the case of Valso Santiago, because of course, an admission by a defendant, well, we need to, we as defense attorneys need to contend with those things. But this letter was nothing in its butchered form or in its original form like an admission. And that is why we are objecting to that. And I just, I know it seems like Judge Rickleman, you want to ask something, but I just need to mention the, the incredible harm that was done, not only by the admission of the letter, but also by the judge's judicial notice of the contents of that butchered and mangled contents of that letter. So did the judge just read the redacted letter into the record and just say I'm taking judicial notice of it? Much more than that, your honor. The prosecutor read the redacted letter into the record and then immediately afterwards, by which I mean on the next page of the, of the transcript, the judge took judicial notice and said that the contents of the letter, which I had just read to you is what the judge said, but really it was the prosecutor that read it, the contents of the letter were so, were so, could not be disputed. I don't want to, that's the quote that I want to, there were such facts that were not in any kind of dispute at all. But what exactly, though, was he noticing? Just what was on the piece of paper or the, do you think he was telling the jury this is a true admission? Well, I think we have to go by what the judge did. So this is, this, this happens on page 457 and 458 of the record during the trial. At 457 and 458 of the appendix, it happens on the last day of trial. It's the last piece of evidence that comes in. I believe the closing arguments and instructions were the following day, so the last day of evidence in the trial. And, and the instruction that the court gave is, and I am reading it verbatim now, I believe, this is the court speaking, I believe that the contents of the letter the defendant sent to the court, which I read to you, can be so accurate and readily determined that it cannot be reasonably disputed. You may therefore reasonably treat this fact as proven, this fact as proven, and I know that's your question, Judge Hamilton, even though no evidence has been presented on this point. And if you, the only fact is, in many occasions, I have expressed my desire to reach an agreement with the government. I am in the best disposition to make a fair, reasonable, and intelligent agreement with the government. You haven't answered my question, to quote the judge. One version of that would be prejudicial, perhaps unfairly, the other is pretty neutral. The letter says what it says. Well, that isn't what the letter said. The letter said I need to have a ruling that's months due on a suppression hearing. That is what the letter said. All those references were redacted from the letter. Would it have been better if there had been no redaction? The letter should not have been admitted. All the letter was asking, so no, it wouldn't have been, it would have been the same man, it would have been a different man, I guess is my sort of paradoxical answer to that. But no, but the, and just the notion that somebody wants to plead guilty is not evidence that belongs in front of the jury. It's in the Gotti case, it was described in quite vivid detail why that could be prejudicial. In the Balsow case, which your Honor, Judge Thompson penned, the references wanting to plead guilty were redacted because that could be prejudicial. The jury knowing that someone wants to enter into a plea is, as defense counsel stated in his objections, basically tantamount to the defendant admitting in Balsow, the defendant also explicitly admitted. Here, Mr. Pia never admits to a crime. So again, the letter said what it said, nothing about that letter should, the jury never should have seen any of that letter. The redacted letter is not what Mr. Pia DeAnne said and may be even worse. Thank you. Thank you, counsel. At this time, counsel for the government will please  begin. Good morning, Judge Rippleman. It is the court here at Borenstein on behalf of the United States. I have a lot of ground to cover, so unless any member of the panel would like me to begin elsewhere, I will start with the points of claims of error that my friend just addressed, beginning with the Florida testimony. Why don't you start with the letter? Sure. Oh, I don't understand the relevance of it. So the letter was relevant, and the way it was used is the prosecutor spent three lines on it in his closing argument. You can find that on appendix page 508. And the idea was simply... But if you talk about the power of admissions, professionally, that case law talks about that those have even more power than any other evidence. So, you know, it's not insignificant evidence, even if the prosecutor has finished a brief amount of time and the jury heard it. So the jury was provided with a copy of the letter, and the letter said that the defendant on many occasions had expressed his desire to reach an And the parties were then able to argue to the jury what that meant. I don't understand how that's an admission of guilt. And, Your Honor, that was a determination for the jury to make. On the one hand, the prosecutor said, we believe this is consistent with the testimony showing that he was indeed part of the drug conspiracy. The defense counsel then got up and tore a whole page, said, no, this is not an admission. This is a person who says he's going to plead guilty because he realizes that there's going to be false testimony against him. Those two versions of the letter were presented to the jury, but it was a very minor part of the trial. There is no argument by the defendant. It came in the first place because, as my friend noted, it was it was submitted as part of the part of the government's case in Geneva. There was a motion in limine. How is it relevant? I mean, I understand from assuming the assistant counsel was accurate and how it got to the court in the first place. I still don't understand the relevance of it. Sure. The relevance is that the jury could infer that if the defendant were repeatedly saying that he wants to enter into a plea agreement with the government, the jury could then infer that he was guilty of the offense. But that was not a necessary inference. And the parties argued both sides to the jury. But is there any case suggesting that a desire to enter into or an interest in entering into a plea agreement or plea negotiations can be used as evidence of guilt? Judge Oakwood, those are two different things. Plea negotiations versus pleading guilty. My friend keeps trying to say that he was simply saying he wants to enter into plea negotiations, but that's not what the letter said. The letter is the final page of the appendix, and the exact statement is, in many occasions I've expressed my desire to reach an agreement with the government. Are you saying the letter is devoid of any context? The context being going on in the background that at least at some point there were plea negotiations in both of the cases that he was inquiring about and probably prior plea negotiations in this one? There are no mentions of plea negotiations in the letter. It's simply the appendix. That makes it worse, doesn't it? Because it doesn't give the full context of what he might have been asking for. The defendant was the one who wrote the letter. And by the way, your honor, all these points are ones I would strongly suggest that you look at the motion and eliminate that defense counsel file because the defense counsel's motion eliminating it is docket entry 522. When they said that this they did so on the grounds that it included information about the defendant's other case. And they said that was prejudicial and that should be excluded. There was no argument that it was irrelevant on the grounds that it didn't tend to show that he may be guilty of the charged offense. He says docket entry 498 contained references to case 17-608 which charges acts that are not relevant to the present case because they present the derivative information of different charges. And then he cites rule 401. He then cites rule 403 saying the facts related to the suppression of the evidence in case 17-608 are not relevant to the present case. And what happened when there was a proceeding discussing motion eliminate, the government said we will consent to redact the letter. And then the letter was redacted and through the entire process, and this occurred during open court proceedings where the prosecutor was putting various versions of the and the district judge was, you know, saying, you know, maybe this should be redacted, maybe that shouldn't be. Counsel stood there silent. He did not object to any of the redactions. So he started Yes, your honor. I'm asking, in the lengthy discussions about this letter, the district judge said that if it were an admission of guilt, he would not let it in. And that seems to be the argument for relevance. I agree that what the district judge said is not the clearest. And indeed, the district judge said, contrary to the theory that's being used to the prosecutor used in trial, to argue for his admission. I'm very troubled by that. Well, Judge Hamilton, the district judge also believed that was what Fausto Santiago said, that a letter may not be admitted if it is an admission of guilt. So what's the theory? What's the theory for the relevance here? I don't want to go back to that. I think that the judge was misspeaking. I strongly doubt that the district judge... What's the theory for relevance, as Judge Hamilton said? Yes, the theory for relevance is, as we argued to the jury, it was consistent with the testimony showing that the defendant was part of the drug conspiracy. That it's an admission? Yes. Okay. And your best explanation is that the judge just misspoke when he said it was an admission, I would not let it in. Because otherwise, yes, the judge's statement does not make sense on this case. Thank you. To go back to the question I asked you, I'm looking at the words in the letter. Yes. So I would appreciate if you could point to any case law that says that the phrase, I've expressed my legal representation, my desire to reach an agreement with the government, is sufficient evidence to suggest an admission of guilt, that that could be admitted, an admission of guilt of the defendant. Neither party has been able to find any case law suggesting that either that statement can be used, or, sorry, any case law stating that desire to enter into a plea agreement shows a desire to plead guilty, or sorry, shows it is an admission or is not an admission. Neither party has come forward with any case law. So I think we simply need to return to first principles, which is what is a reasonable inference from a defendant's often expressed desire to reach an agreement with the government. And if you look at how my friend treated that in their closing argument, they took that as a desire to plead guilty to this case. And my friend in her reply brief said, well, you know, why do we think it has to do with this case? But I would ask the court simply to look at their closing argument. And this is page 524. They say, the letter, it, meaning the letter, doesn't say that I possessed with intent, that I became a member of a conspiracy, that I was part of a conspiracy. It doesn't say anything of that. This is the letter of an individual that has been accused by the prosecutor, knowing that they are using false testimonies. That's what it is. So both sides, again, Your Honor, were able to argue what the letter meant. And my friend doesn't make any argument that this letter was material to the My friend's argument on this point is only a couple of pages. She simply argues it should not have come in. And there are major preservation issues with that argument, as we point out. She relies heavily upon the jury instructions that were given to the jury. They were never objected to. So it's reviewed for plain error. She doesn't argue plain error. I believe that the best reading of the instruction is not what my friend is. The judge wasn't telling the jury. It is clear that the defendant was wanting to plead guilty. And that is what the letter says. Simply the judge said the contents of the letter, what the defendant wrote to the court, is clear. And then you can take that as you may. And again, the parties were able to argue to the jury what it meant. And I believe a reasonable inference is that if a person repeatedly says, I want to enter the It's not what it says though. No, that's why it's an inference argument. If I may return to turn it back to the first thing that my friend started with, which is the Florida testimony. I'd like to point two things out quickly. Number one, her position that the entire conspiracy only had to do with drugs on an airplane from San Juan to New York is wrong. First of all, it's wrong as a matter of the superseding indictment. The superseding indictment simply set forth various means and manners and said it included those not limited to. More importantly, if you look at page 556 of the appendix, it is Mr. Villa's argument at sentencing. And he emphasized the fact that the conspiracy was not limited to the flights. This is what his counsel said. I want to point out, Your Honor, page 556. I want to point out, Your Honor, that we have to remember the testimony of Harold Dominguez, that he said that after Makula's intervention in 2010, they were sending drugs through mail. The court responded, well, it was part of the conspiracy. Mr. Villa's attorney responded, Your Honor, but the point is, that takes away this whole story that for three years they were sending drugs through Delta Airlines in suitcases. He was making that argument to say, Your Honor, my client, all the testimony about him being involved in sending, uh, in participating in suitcases of cocaine going from San Juan to New York, he's trying to de-emphasize that and say, keep in mind there was much more to the conspiracy than that. So I'm not sure how my client can then stand up here at oral argument and say, no, that's all that the conspiracy had to deal with. Again, especially when at sentencing, they were emphasizing they're sending by mail. Now, how is that? Counsel, we need to look at what was in front of the jury at trial, not what happened at sentencing, to evaluate this evidence. So was there any any evidence at all testimony or otherwise at trial that linked the Florida incident to the conspiracy that was charged? I believe it's a reasonable inference, and this is why, Your Honor. Herrera testified that Villa was an investor in cocaine on five occasions, and he testified that what it meant to be an investor is that you would purchase the kilos of cocaine that were then given to the mule to transport to, uh, to New York. Now, as an investor, he has to search out for the kilos of cocaine, and I think the fact that he was in Florida seeking to buy kilos of cocaine during the time of the conspiracy, and especially knowing that the conspiracy included means other than the There's testimony saying he's out there buying kilos of cocaine to have distributed through the conspiracy. It's relevant evidence that during the time period of the conspiracy, he's trying to buy kilos of cocaine. Is that how the prosecutor framed this evidence for the jury at the trial? Because my understanding, looking at the, I think it was the closing argument, you have to tell me if I'm wrong, is that it really was framing just propensity evidence that this particular Florida incident just made it more likely that Mr. Villa was part of the charged conspiracy? Tell me if I'm mistaken. I think that the prosecutor in his closing he did refer to it as, uh, what he repeatedly said is this testimony is consistent with our the prior legal relationship between Villa and Carrera. That's what he said, I think, about most of the testimony. That was simply a phrase that the prosecutor deployed. This is consistent showing that he's a willing member of the conspiracy. I do not believe that the prosecutor presented it as propensity evidence. I'm not sure I understand the difference. So, I believe there's no overlap between the people you said before and the defendant, right? Indirectly, yes. So, what does that mean? So, it means, your honor, that... What does consistent mean if it doesn't mean propensity? It means that this is affirmative proof that the defendant was a member of the conspiracy and was indeed an investor as Mr. Carrera testified. How? What was that propensity? Because there's no other link. So, the link is there by inference. The point is, the jury may look at the evidence before and make reasonable inferences. And when the evidence shows, sorry, when one witness says the defendant is an investor in cocaine, which means that he goes out and buys the kilos of cocaine that are then distributed through the organization, and there's evidence that during the time period of the cocaine, that is relevant evidence. It is evidence that has a tendency to make more likely a practical consequence. And there was no 403. What was the evidence that the conspiracy involved getting drugs in Florida and funneling it through the conspiracy? The evidence of it was the fact that that is what the defendant was found doing. This was a very lean case. Well, he was found doing it because the court admitted it. What other than that? I mean, rather than admitted it, admitted that piece of evidence. Yes, it's the fact that it's a reasonable inference given the fact that we know that there are multiple means that the conspiracy used to get drugs up to New York distribution. Well, what was the evidence of the multiple means besides the suitcases coming out of San Juan? Mr. Dominguez's testimony that he also received drugs by mail. And that is a common... Wrong. By mail from where? He did not say from where. So I believe the jury could infer, again, Your Honor, at no point in time did anyone, including the defense counsel... Did somebody ask him? No, and indeed, if this were truly relevant to the defense, if they felt that this is something that could show that this was unrelated, the defense could always have asked questions. What asked the prosecutor? Your Honor, there always could be more evidence. The question is simply, was the evidence here relevant? And that is the only question. And there are major preservation issues as well. I'd like to underscore, my friend is arguing 403, 404B, that there are issues with that. There were no 404B objections below. I'd also like to point out one other thing, as you consider this, and this is the backdrop that the district court and the prosecutor had in their mind when it came to the admission of this evidence. In the months leading up to trial, docket entry 483, the defense attorney filed an informative motion, and they said, the government made available to the defense a discovery package containing information related to different events. One of them consists of an incident where $14 of U.S. currency were seized. This event took place as a result of an investigation of the Homestead Police Department and Miami Dade Police Department in the state of Florida. The event provided by the government is extremely important to the defense, inasmuch as they, because there's another event that I keep referring to, but it includes the Florida event, constitute the only material direct evidence against Mr. Villa. So coming into trial, Mr. Villa was saying, this Florida incident, and another which eventually did not come in, but this Florida incident is the only material direct evidence against me. That is the backdrop for the prosecutor and the court when this evidence comes in, and the only time that the defendant's position changes is at the very end of, I believe, the, is it the second witness's testimony, where he says, you know, objection 401, I do not believe that this is linked up to the conspiracy. But that is the only objection. The defense was going to have to suppress all of this evidence, didn't it? But, yes, Your Honor, but suppression is a Fourth Amendment claim. They claim that the officer didn't have a problem with this. I understand that the reason that the motion was made was because, as defense counsel argued, there was no direct testimony being presented. There were no, you know, they talked about it in their brief, there were no receipts, there were no photos, there were no airplane tickets, nothing showing, no concrete documentary showing that Mr. Villa was part of this conspiracy. And so, in context, what you just read is just defense counsel underscoring why he was objecting to this testimony coming in. Your Honor, that is incorrect. I will say that was an argument made, but it was made in a very different context. That was an argument made to the jury as to why they shouldn't credit the witnesses. The Fourth Amendment argument was that the officer didn't have probable cause to stop the vehicle because there was no evidence that the defendant was doing anything wrong. And when he re-raises the objection at trial, and you see this, his argument is that he believes that the DEA informant, Mr. Salvas, was simply lying, that there was no drug deal, that nothing was happening of that nature. So that was the Fourth Amendment argument. There was no probable cause for the officer to stop the vehicle. It had nothing to do with the lack of evidence. If I ask you, and maybe one of my colleagues has a question, in the context of this case, what does the government understand to be the difference between a supplier and an investor? I understand the theory is that the DEA informant is an investor but not a supplier? Yes. So the definition of investor comes on Penance page 351. It's Mr. Herrera's testimony. And he says, investor means buying the materials that would be the kilos of cocaine. You buy it at a price, and then you sell it at a better price when it arrives at the other place. That is what you do on an investor. I could arbitrage, but that also sounds like being a supplier. Yes. It sounds as though there's some bleeding over. The key thing is that Herrera defines investor as someone who is buying the cocaine as well. And indeed, Herrera testifies that his drug trafficking organization was open to distributing kilos owned by other people. And I think that's what it means to be an investor. You're another person. He'd simply charge you $2,000 per kilo to have your cocaine distributed through his network in New York. So once again, the fact that the defendant in Florida buying kilos at a discounted price – and I say discounted because you will see Herrera testifying that he would make – I believe it was between $30,000 to $34,000 per kilo in New York at the time. And then you have the defendant seeking to buy 11 kilos of cocaine in Florida, and he was caught with $296,000. It's not clear how much of that money was intended for the 11 kilos of cocaine. But if you do the math, if he were to take that cocaine and sell it in New York, he is still making a profit. And so all of this is relevant and consistent evidence. There were many others. Thank you, counsel. Thank you. Thank you, counsel. If the counsel for the appellant will please reintroduce herself on the record to begin. She has a three-minute rebuttal. Good morning again. I'm Rachel Brill representing Ricardo via the N. The letter testimony and the Florida testimony – the letter admission and the Florida testimony were not at all minor parts of the trial. They were the bookends of the trial. They – from a primacy and recency point of view, they were incredibly important. But they were incredibly important for so many other reasons. As Judge Rickleman, you said, there were no airplane tickets. There were no airplane trip dates. There were no booking arrangements, itineraries, hotel receipts, hotel names. Your Honors, there was not even a picture of Mr. Via the N. next to the Empire State Building to show that he had ever set foot in New York. There was only the testimony of the two witnesses that indicated him. The two witnesses with plenty of need, with respect to Mr. Herrera, a tremendous amount of need to please the prosecution. And the theory of the defense was that they were lying and or that they were embellishing their testimony to please the prosecution. And that's part of the other claims that I make on appeal as well, that Mr. Via the N.'s counsel was thwarted from proving that theory of the defense. But back to the very not minor but major bookends in the trial, the government prosecutors spent far more than 12 lines in the closing argument on page 508. Members of the jury, I submit that is an admission. That is the defendant saying I admit to what I have done and I am in the best position to come to an agreement with the government. And this is after the judge stated on – before giving jury instruction, right after the letter came into evidence, I believe the contents of that letter are not in dispute. Here's the prosecutor talking about that as an admission. And the judge had just told the jury the contents are not in dispute. Again, in the rebuttal, what the letter does say, which is extremely important, my desire to reach an agreement with the government. If that is what the defense is arguing, you are not going to want to reach an agreement on anything. If everyone is lying about what you have done, you don't want to reach an agreement. This letter on its face contradicts what the defense has said. This is the defendant admitting to what he has done. This letter that the judge said the contents are indisputable, this letter is the defendant admitting. This is a judge directing a verdict and the prosecutor is sealing that in his argument and in his rebuttal. With respect to the Florida – Mr. Officer, Judge Hamilton asked a few minutes ago a question about what the judge said about their – I thought it was that admission of guilt. I wouldn't admit it. We have to figure out, the judge having made that statement, I mean, how did it – how did it translate? There were many interchanges about this. Preservation was not an issue at all, Your Honor. There were many interchanges and objections and discussions, and the judge zigzagged throughout those interchanges. I laid them out in sort of chronological, and it's hard to lay them out because there are so many different and inconsistent points. But in my reply brief – I don't have the pages, but in my reply brief, I speak exactly about that. At one point, he says it was an admission. At another point, the judge says it was an admission. In his post-verdict order, where the issue was raised again and the judge ratifies his decision again, he calls it an admission, I think. So the judge has many different expressions about this, and the Defense Trial Council tried to object to all of them. Investors and suppliers just want to touch on it for a second, if I might. The government, on the record in this case – so there's in the trial, and there's on the record, and none of that involves the state of Florida. So in the trial, the government speaks about Alex Carreta, who is Humberto Concepcion, who is one of the co-defendants in the case, being a supplier. The witness also speaks about someone named Envisco, who means the cross-eyed man, as being one of the suppliers. And there's a third name mentioned as a potential supplier. In its papers before the court – and this is years of litigation, so 2016 cases, 2017, superseding indictments, a 2019 trial. In the years of litigation, the government refers to Humberto Concepcion as the, quote, sole supplier of the organization. So none of this, even allowing for some measure of, not inconsistency, but just a broader understanding of what a supplier is, none of it implicates the state of Florida, which, once again, would make no sense if the drugs are on the mainland, that they're where they need to be. That's what it's all about. Thank you, counsel. Thank you. That concludes argument in this case.